475 So.2d 780 (1985)
DeWade WIGGINS
v.
Ansel CREARY, et al.
No. 84-CA-0027.
Court of Appeal of Louisiana, First Circuit.
February 26, 1985.
On Rehearing September 27, 1985.
Writ Denied November 22, 1985.
Stephen M. Irving, Baton Rouge, for plaintiff-appellant DeWade Wiggins.
V. Elaine Boyle, and Winston G. Decuir, Dept. of Justice, Baton Rouge, for defendant-appellee Southern University, through its Bd. of Sup'rs.
Robert C. Williams, Baton Rouge, for defendant-appellee Ansel Creary.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
*781 EDWARDS, Judge.
From a judgment maintaining the defendants' exception of prescription, plaintiff appeals. We affirm.
The plaintiff, DeWade Wiggins, filed suit on Monday, June 27, 1983, against Ansel Creary and the Board of Supervisors of Southern University for alleged defamatory statements which Creary made to a reporter of the Morning Advocate, a Baton Rouge newspaper, on June 24, 1982, and which were published in an article on the following day, June 25, 1982. Both defendants filed an exception of prescription. At the hearing on the exceptions, the parties stipulated that the alleged defamatory statements were first communicated to the reporter on June 24, that Wiggins was made aware of the defamatory statements on June 24, when the reporter contacted him for comment, and that the article, containing the defamatory statements as well as Wiggins' denials, was published the following day on June 25.
The trial judge held that under LSA-C.C. art. 3537 prescription commenced on June 24, 1982, the day on which Creary communicated the defamatory words to the reporter. In addition, he noted that, "The publication of the remarks in the Morning Advocate newspaper on June 25, 1982, is only important in assessing damages, inasmuch as plaintiff knew on June 24, 1982, that defendant Creary made the alleged defamatory remarks." Consequently, the suit, filed on June 27, 1983, was untimely. He therefore dismissed the plaintiff's suit.
Prescription on delictual actions commences to run from the day injury or damage is sustained. LSA-C.C. art. 3492.[*] Plaintiff argues that prescription did not commence to run until June 25, the day the article was published, because that is the day when the most extensive damages were sustained. In support, he cites South Central Bell Telephone Co. v. Texaco, Inc., 418 So.2d 531 (La.1982), which holds that prescription for continuous torts commences from the date of the last harmful act.
Defamation is not a continuous tort. The principle articulated in South Central Bell applies only when continuous conduct gives rise to continuing damages. Since each and every publication, or communication, of a defamatory statement to a third person constitutes a separate cause of action, Neyrey v. LeBrun, 309 So.2d 722 (La.App. 4th Cir.1975), the conduct causing the damages, i.e. the publication, cannot be said to be continuous. Moreover, for prescription purposes, damages are sustained from the date the injury is inflicted, if immediately apparent to the victim, even though the extent of the damages may not yet be known. See Home Insurance Co. v. Highway Insurance Underwriters, 52 So.2d 449 (La.App. 1st Cir.1951), reh'ing denied 53 So.2d 298.
It is true that Creary would have been liable for any damage which resulted from the publication of the article, as the natural and intended consequence of his actions, had he been sued timely. See Cormier v. Blake, 198 So.2d 139 (La.App. 3rd Cir. 1967). However, whether the article had been published or not, Wiggins' damages, even if only nominal, were sustained on June 24, the day both on which Creary communicated the statement to the reporter and on which Wiggins became aware that the statements had been made. The trial judge was correct that the publication of the article was important only in establishing the extent of publicity in order to assess the amount of damages sustained.
If a prescriptive period consists of one or more years, prescription accrues upon the expiration of the day of the last year that corresponds with the date of the commencement of prescription. LSA-C.C. art. *782 3456. Plaintiff's cause of action commenced on June 24, 1982. He had until midnight on June 24, 1983, to file suit. Since he did not file suit until Monday, June 27, 1983, his action against Creary had prescribed.
Accordingly, we affirm the trial court's judgment sustaining the defendants' exception and dismissing plaintiff's suit. All costs of these proceeding are assessed against appellant.
AFFIRMED.

ON REHEARING
SHORTESS, Judge.
A rehearing was granted in this case to permit us to consider the effect of the newspaper's republication of the defamatory statements upon plaintiff's cause of action against the defendants Ansel Creary and the Board of Supervisors of Southern University.
In our original opinion, we agreed with the trial court that "[t]he publication of the remarks in the Morning Advocate ... is only important in assessing damages." We found that "Wiggin's damages, even if only nominal, were sustained on June 24, the day both on which Creary communicated the statement to the reporter and on which Wiggins became aware that the statements had been made." In so concluding we erred.
The elements of cause of action in defamation are (1) defamatory words, (2) publication to a third party, (3) falsity of the statement, and (4) injury.[1] Although the general rule is that the original author of a libelous publication is not to be held liable for the voluntary republication of it by others, an exception exists where the republication is the natural and probable consequence of the defendant's act. This exception has been adopted by the Louisiana jurisprudence. Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3rd Cir.1981), writ denied, 410 So.2d 760 (La.1981); Cormier v. Blake, 198 So.2d 139, 144 (La.App. 3rd Cir.1967); Giordano v. Tullier, 139 So.2d 15, 19 (La.App. 4th Cir.1962).
It is clear that republication in the newspaper was a natural and probable consequence of Creary's statements to the reporter in this case. Under a tort analysis, Creary's statement was a cause-in fact and proximate cause of the subsequent publication, or, to put it another way, the duty imposed upon a person not to utter defamatory statements to a newspaper reporter encompasses the risk that those statements will be republished by the reporter. Under this analysis, plaintiff's cause of action for damages from the original publication (Creary to reporter) has prescribed, as we held originally. However, defendants' communication of defamatory statements to the reporter makes them liable for the newspaper's republication. Plaintiff's cause of action for the republication accrued, and the prescriptive period commenced, only upon concurrence of all four of the elements of the defamation cause of action. This occurred on June 25, 1982, the date of the republication. Thus, suit filed on June 27, 1983, was timely as to the damages flowing from the republication.
Accordingly, we set aside our original judgment. The judgment of the trial court sustaining defendants' exception and dismissing plaintiff's suit is reversed. This case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to defendants.
REVERSED AND REMANDED.
NOTES
[*] Title XXIII, Chapter 3, Section 3 of the Louisiana Civil Code of 1870, which consisted of articles 3528 through 3554, was redesignated as Chapter 4 of Title XXIV, Book III, by Acts 1982, No. 187, effective January 1, 1983. The same has been revised, amended and reenacted by Acts 1983, No. 173, § 1, effective January 1, 1984, to consist of articles 3492 through 3504. Since the 1983 revision does not effect substantive changes in the law of liberative prescriptions, we will refer to the revised articles in this opinion for purposes of simplicity.
[1] Additionally, malice is a fifth element required to prove defamation in the publication of information of public interest. Proof of malice is not required in this case. See Davis v. National Broadcasting Co., 320 F.Supp. 1070, 1072-73 (E.D.La.1970), aff'd, 447 F.2d 981 (5th Cir.1971).