790 So.2d 725 (2001)
Ann NOLAN
v.
JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 2, Parish of Jefferson, State of Louisiana, d/b/a East Jefferson General Hospital, et al.
No. 01-CA-175.
Court of Appeal of Louisiana, Fifth Circuit.
June 27, 2001.
*727 Joel T. Chaisson, A.P.L.C., Destrehan, Catherine Leary, Westwego, Counsel for Plaintiff-Appellant Ann Nolan.
Salvador Anzelmo, Michael J. Laughlin, New Orleans, Counsel for Defendant-Appellee, Hospital Service District No. 2, Parish of Jefferson, State of Louisiana, d/b/a East Jefferson General Hospital.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
This is an appeal from a judgment dismissing as prescribed plaintiff's action against her former employer for retaliatory firing and defamation.
On October 26, 1998 Ann Nolan filed suit against Jefferson Parish Hospital Service District No. 2, Parish of Jefferson, State of Louisiana, d/b/a East Jefferson General Hospital ("EJGH"). The suit was filed in the Twenty-Ninth Judicial District Court for the Parish of St. Charles, where plaintiff resides. Plaintiff alleged that on or about October 27, 1997 she was wrongfully terminated from her job at EJGH for violating company policy, that the Louisiana Board of Review subsequently determined that she had not deliberately violated company policy or ignored any instructions that were given to her, and that she suffered a great deal of mental anguish as a result of this incident. She prayed for judgment reinstating her position as well as awarding her damages.
Plaintiff did not request service of her original petition on counsel for EJGH until January 20, 1999. EJGH was served on January 26, 1999. On February 1, 1999 EJGH filed declinatory exceptions of insufficiency of service of process and of improper venue.
The exception of improper venue was granted and on June 16, 1999 the St. Charles court ordered that the matter be transferred to the Twenty-Fourth Judicial District Court, Parish of Jefferson (domicile of EJGH). Both the damages action and the hospital's appeal to the district court of the unemployment compensation action (in which plaintiff ultimately was awarded benefits) were transferred as a consolidated matter. Although plaintiff states in her brief that EJGH appealed the ruling awarding her benefits, that ruling is not before us for decision on this appeal.[1]
*728 After transfer of the case EJGH filed another exception of insufficiency of service of process, asserting that service of plaintiff's petition on EJGH had not been requested until September 8, 1999 and that service was not made until September 10, 1999. Defendant cited the provisions of La.R.S. 13:5107(D), La.C.C.P. art. 1201(C), and La.C.C.P. art. 1672(C), contending that it was entitled to dismissal of the action for failure to make timely request for service. The district court denied the declinatory exception. Defendant has not sought review of that ruling.
On October 27, 1999 plaintiff (represented by new counsel) filed a First Supplemental and Amended Petition, incorporating the allegations and demands of her original petition and adding as defendants Cheryl Kelley, Linda Bollhalter and Janice Kishner, former co-employees and/or supervisors of plaintiff during her employment at EJGH. Plaintiff listed a number of actions taken by the individual defendants between December 1996 and during 1997 of which she had complained to superiors. These were, specifically, as follows:
(A) In December 1996, defendant Cheryl Kelley improperly pressured employees working under her supervision to contribute money to pay for a Christmas party, and the money was not formally accounted for ..., and petitioner voiced her concerns about Ms. Kelley's actions to a supervisory employee.
(B) On September 10, 1997, defendant Cheryl Kelley did not arrange for certain computer training normally given to new employees. Petitioner ... voiced... concern to a fellow employee charged with personnel training ....
(C) On approximately six other occasions during the course of the year 1997, petitioner had a reasonable, good faith belief that certain actions taken were not in the best interest of the hospital and she voiced this belief to supervisory-level employees ....
In particular, plaintiff complained that in September and October 1997, the individual defendants instructed nursing employees to accept verbal orders from pharmacists to change doses of prescription medication, that plaintiff had a reasonable good-faith belief that such was contrary to hospital policy, and that she not only voiced concern to the individual defendants, but also made complaint to a member of the medical executive committee charged with responsibility for hospital management. As a result, plaintiff alleged, on October 16, 1997 the Executive Medical Committee issued an order prohibiting nursing personnel from accepting verbal orders from pharmacists.
Plaintiff alleged that prior to October 16, 1997 the individual defendants had engaged in acts of harassment of her in retaliation for her voicing of concerns, that after October 16, 1997 such acts increased in seriousness and intensity, including the making of defamatory statements about plaintiff in the form of written reprimands or criticisms placed in her personnel file, including the following: that she was disruptive in the workplace, "acts out in the unit," "has had the unit in chaos," "has intentionally attempted to malign [Kelley's] character," "has spread rumors and untruths," and engaged in "`breech [sic] of patient confidentiality' and has made unauthorized copies of patient records and has not kept records secured."
*729 Plaintiff alleged that the defamatory statements had been published within the hospital and to third parties outside the hospital, in that a copy was furnished to the administrative law judge for plaintiff's unemployment compensation claim on January 7, 1998, re-published by being included in the record and submitted to reviewing authorities, and remains in the record while the defendant hospital contests plaintiff's right to unemployment compensation. In addition, plaintiff asserted that these defamatory statements have been published to third parties when plaintiff sought work and prospective employers called EJGH for a reference.
Plaintiff further alleged that on October 27, 1997 she met with the individual defendants, Kishner, Kelley and Bollhalter, and another employee. She stated that the three individual defendants again made defamatory accusations against her and demanded that she resign. Plaintiff refused to resign. Two days later Bollhalter informed plaintiff that she was terminated effective October 30, 1997 for breach of patient confidentiality. In addition, Bollhalter not only signed a termination letter dated October 30, 1997 that repeated the defamatory allegations of breach of patient confidentiality, but also repeated the allegations at the January 7, 1998 unemployment compensation hearing.
Plaintiff alleged that the wrongful acts were in retaliation for her "whistleblowing" activities. She stated that she complained of the acts to the individual defendants' supervisors, but the acts were ratified by the EJGH supervisory employees.
Based on these allegations, plaintiff pleaded entitlement to recovery under the Louisiana Whistle Blower statute (La. R.S.42:1169) and to damages for violation of her state constitutional rights to freedom of speech and expression, violation of her U.S. First Amendment right to freedom of speech, and intentional infliction of emotional distress. Plaintiff alleged she sustained lost income of approximately $40,000 (including loss of fringe benefits), damage to her professional and personal reputations, mental pain and anguish and loss of enjoyment of life, and loss of her employment.
Plaintiff sought reinstatement and back pay, an injunction requiring that the "improper and unfounded and defamatory" reprimands be removed from her personnel file, and an award of damages to compensate her for her losses, as well as attorney's fees, punitive damages for grossly negligent, wanton, malicious, wrongful, willful, arbitrary and capricious acts, legal interest and all costs.
Defendants Kelley and Kishner filed a motion for extension of time to file responsive pleadings, but never filed any further response. Defendant Bollhalter never was served.
Defendant EJGH filed an exception of prescription, on the basis of one year prescription of delictual actions under La.C.C. art. 3492. The district court rendered judgment that denied the exception of insufficiency of service of process, but granted the exception of prescription and dismissed the lawsuit without reserving plaintiff's rights as to the individual defendants. Plaintiff appeals.

MOTION TO DISMISS
First, we note, appellee EJGH filed a motion to dismiss the appeal as premature, on the ground it is a partial non-final judgment because it maintained the exception of prescription as to one of multiple defendants and did not adjudicate the liabilities of the remaining defendants. EJGH contended appellant had no right to appeal the judgment without a designation *730 of finality for purposes of immediate appeal pursuant to La.C.C.P. art. 1915(B).
We denied the motion to dismiss, however, in a separate order signed on May 8, 2001. Although this is a partial judgment, it is also a final judgment under La.C.C.P. art. 1915(A) because it "dismisses the suit as to less than all of the ... defendants." An appeal may be taken from a final judgment under Article 1915(A) without the judgment being designated a final judgment under Article 1915(B). La.C.C.P. art. 1911.

MERITS
We address the issues on appeal in the order set out by appellant.

1. Whether petitioner's claims regarding defamatory statements at the January 1998 hearing and in the March 1998 petition have prescribed.
Delictual actions are subject to a liberative prescription of one year, which commences to run from the day injury or damage is sustained. La.C.C. art. 3492. Nolan acknowledges implicitly that any claim for defamation from the events of October 1997 has prescribed because she failed to make defamation claims in her original petition filed in October 1998. She contends, however, that her claims for defamation arising from the unemployment proceedings in January 1998 and March 1998 are still viable; in fact, she argues, those claims are premature because they were made before conclusion of the legal proceedings.
"Each publication of a defamatory letter or statement results in a new and separate tort." Neyrey v. Lebrun, 309 So.2d 722, 725 (La.App. 4 Cir.1975). "[E]ach and every publication, or communication, of a defamatory statement to a third person constitutes a separate cause of action." Wiggins v. Creary, 475 So.2d 780, 781 (La.App. 1 Cir.1985), writ denied, 478 So.2d 910 (La.1985).
The elements of cause of action in defamation are defamatory words, publication to a third party, falsity of the statement, and injury. Wiggins, 475 So.2d at 782. Thus, a cause of action for re-publication accrues, and the prescriptive period commences, only upon concurrence of all four of the elements of the defamation cause of action. Id.
"[A]n action for defamation arising out of allegations made in judicial proceedings and against a party to those proceedings cannot be brought until those proceedings are terminated." Ballex v. Naccari, 95-57, p. 2 (La.App. 4 Cir. 6/7/95), 657 So.2d 511, 512. One reason for that rule is that the cause of action does not arise until the party making the allegations has had the opportunity of proving the truth of the allegations in the proceedings in which they are made. Loew's, Inc. v. Don George, Inc., 237 La. 132, 110 So.2d 553, 561(1959).
Accordingly, any claim plaintiff may have for allegedly defamatory statements made during the course of legal proceedings is not prescribed.[2]

2. Whether petitioner's whistle-blower claim has prescribed.
On appeal plaintiff cites two "whistle-blower" statutes that she asserts provide her with a cause of action.
*731 La.R.S. 23:967, contained in the Labor and Workers' Compensation section of the Revised Statutes, protects employees from reprisal for various actions. It states, in pertinent part:
A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.
In addition, La.R.S. 42:1169, which is part of the Code of Governmental Ethics portion of the Revised Statutes, provides in pertinent part:
A. Any public employee who reports to his agency head or the board information which he reasonably believes is a violation of any provision of law within the jurisdiction of the board or of any order, rule, or regulation issued hereunder or any other alleged acts of impropriety within any governmental entity shall be free from discipline or reprisal for reporting said acts of alleged impropriety. No employee with authority to hire and fire, supervisor, agency head, or other elected official shall subject to reprisal any public employee because of said employee's efforts to disclose such acts of alleged impropriety.
B. Any public employee who reports to a person or entity of competent authority or jurisdiction information which he reasonably believes is a violation of any law or of any order, rule, or regulation issued in accordance with law or any other alleged acts of impropriety related to the scope or duties of public employment or public office within any branch of state government or any political subdivision shall be free from discipline or reprisal for reporting said acts of alleged impropriety. No employee with authority to hire and fire, supervisor, agency head, or other elected official shall subject to reprisal any such public employee because of said employee's efforts to disclose such acts of alleged impropriety.
C. (1) In the event that any public employee is suspended, demoted, or dismissed in violation of this Section as an act of reprisal for reporting an alleged act of impropriety, such employee shall report such action to the board.
(2) An employee who is wrongfully suspended, demoted, or dismissed shall be entitled to reinstatement of his employment and entitled to receive any lost income and benefits for the period of any suspension, demotion, or dismissal.
D. Any person who violates this Section shall be subject to the same fines and penalties provided for other violations of this Chapter.
Recently, in Puig v. Greater New Orleans Expressway Comm'n, 00-924 (La. App. 5 Cir. 10/31/00), 772 So.2d 842, writ denied, 00-3531 (La.3/9/01), 786 So.2d 731, we held that public employees have a right of action under La. R.S. 23:967 and we found that R.S. 23:967 and R.S. 42:1169 *732 are not mutually exclusive. 00-924 at p. 3, 772 So.2d at 843.
A review of the two statutes in question reveals that while they are both "whistle-blower" statutes, La. R.S. 42:1169 pertains to violations, or alleged violations, of the Code of Governmental Ethics. In order for R.S. 42:1169 to apply, a public employee must first report what he reasonably believes to be "a violation of any provision of law within the jurisdiction of the board [of ethics] or of any order, rule, or regulation issued hereunder or any other alleged acts of impropriety ..." R.S. 42:1169(A) (emphasis added).
R.S. 23:967 is clearly distinct, and targeted at more serious conduct, in that it specifies that the employer must have committed a "violation of state law" for an employee to be protected from reprisal. R.S. 42:1169 does not require a violation of state law, merely an "alleged act of impropriety" under the Code of Governmental Ethics for the public employee to be protected from discipline or reprisal.
Further, the clear and broad language of R.S. 23:967 shows no indication, either expressed or implied, that public employees must be excluded. R.S. 23:967 only requires that "an employer" not take reprisals against "an employee" for reporting, or refusing to participate in, a violation of state law. It does not specify or imply that private, non-governmental employees are only eligible to avail themselves of its provisions, and that public employees are excluded.
Because the two statutes in question are distinct in their triggering mechanisms (conduct which may violate governmental ethics versus conduct which does violate state law), and because nothing in the clear language of R.S. 23:967 shows an intent to exclude them, we find that public employees have a right of action for retaliatory discharge under La. R.S. 23:967.
00-924 at pp. 4-5, 772 So.2d at 844-845.
As noted above, La.R.S. 42:1169 requires that the employee report any reprisal for disclosure of improper acts to the Board of Ethics, while La.R.S. 23:967 under permits the employee to file suit directly against the employer, as plaintiff did in this case. The question is, however, whether the suit under La.R.S. 23:967 was prescribed by one year or two years.
La.R.S. 42:1163 sets out a two-year prescriptive period for actions under the Code of Governmental Ethics: "No action to enforce any provision of this Chapter shall be commenced after the expiration of two years following the discovery of the occurrence of the alleged violation, or four years after the occurrence of the alleged violation, whichever period is shorter."
Jurisdiction to enforce the Code of Governmental Ethics lies in the Board of Ethics. La.R.S. 42:1132.[3] We find no provision for any private right of action under the Code of Governmental Ethics; the employee's remedy is to complain to the Board of Ethics, which then investigates and takes action to protect the employee, if appropriate.[4]
*733 Plaintiff argues, however, that the two-year prescriptive period set out in the Code of Governmental Ethics may be applied to her action because there is no prescriptive period set out specifically within La.R.S. 23:967.
We disagree. The "whistle-blower" claims made by plaintiff are delictual in nature. Absent any specification within La.R.S. 23:967, her cause of action thereunder is subject to the general one-year prescriptive period for delictual actions provided in La.C.C. art. 3492. See Brunett v. Department of Wildlife and Fisheries, 96-535 (La.App. 1 Cir. 12/20/96), 685 So.2d 618, 620, writ denied, 97-186 (La.3/14/97), 689 So.2d 1385. Accordingly, the plaintiff's claim for retaliatory discharge has prescribed.

3. Whether petitioner's claim for an injunction has prescribed.
Plaintiff states she seeks a declaratory judgment that the statements in her personnel file (e.g., the October 16, 1997 reprimand issued to her) are defamatory, coupled with an injunction against future retention and dissemination of same. She asserts this claim has not prescribed because it relates to efforts to prevent new harm (e.g., damage from future publication of the defamatory material; barrier to her future re-employment by EJGH).
Because the trial court declared all plaintiffs' claims prescribed, it did not rule on her claim for an injunction. Rather than render "an impermissible advisory opinion," we merely state that plaintiff's right to seek an injunction remains viable for any claims that are not prescribed. Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697, 702 (La.1993).

4. Whether petitioner's claims for violation of 42 U.S.C. [§ ] 1983 and intentional infliction of emotional distress have prescribed.
Plaintiff asserts that her claims for violation of 42 U.S.C. § 1983 and for intentional infliction of emotional distress have not prescribed because "the prescriptive period was tolled by the pending litigation." She asserts that she was deprived of her "right to follow [her] chosen profession free of unreasonable government interference," a liberty interest protected by the Due Process clause of the U.S. Constitution.
"42 U.S.C. § 1983 imposes liability for violation of rights protected by the United States Constitution, not for violations of duties arising out of state tort law." McCoy v. City of Monroe, 32,521, p. 7 (La.App. 2 Cir. 12/8/99), 747 So.2d 1234, 1240.
Prescription for § 1983 actions is determined by state limitations statutes, in determining the timeliness of a claim under civil rights provisions.... In Louisiana, such actions are limited by the one year prescriptive period contained in La. C.C. art. 3492. The plaintiff had one year from the time of the alleged wrong done [her] to seek recovery.
McCoy, 32,521 at p. 12, 747 So.2d at 1243.
As indicated by the above caselaw, plaintiffs claims for recovery under 42 U.S.C. § 1983 and for "intentional infliction of emotional distress"both arising from her alleged retaliatory dischargeare prescribed *734 just as her cause of action under La.R.S. 23:967 is prescribed.

5. Whether the trial court erred in dismissing the claims against the individual defendants.
The exception of prescription was brought only in the name of EJGH, although the attorney for EJGH also is representing the two individual defendants who have been served (Kelley and Kishner). The only pleading filed on behalf of those two defendants was a motion for extension of time to file responsive pleadings. Accordingly, the trial court erred in dismissing the entire suit. Plaintiff's rights against the individual defendants should have been reserved.

DECREE
For the foregoing reasons, the judgment of the district court is reversed insofar as it dismissed plaintiffs claims for defamation arising during the course of legal proceedings that were not yet completed at the time she filed suit and insofar as it dismissed the suit against the individual defendants. In all other respects the judgment is affirmed. The matter is remanded for further proceedings with respect to the claims not prescribed. The parties are assessed their own costs for this appeal.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] Among exhibits in the record is a copy of the decision of the Board of Review for the Office of Employment Security overturning the denial of benefits to plaintiff. That decision recites the following facts:

Claimant was employed by EJGH from February 13, 1989 to October 28, 1997 as a licensed practical nurse in the Stepdown Cardiology unit. After relating the facts of the episode in which plaintiff had presented a copy of a patient's record to establish her claim that she had been ordered to change patients' medication on verbal orders oil a pharmacist, the Board of Review found that the claimant was discharged for violation of company policy, but she did not technically recopy the patient's medical record and did not ignore instructions given to her in the meeting of October 16, 1997; however, she did not understand that by presenting the information to personnel she breached the patient confidentiality policy, because she was trying to protect herself and to have a written warning removed from her record. The Board concluded that her actions were not a deliberate violation of company policy.
The Board of Review determined that the discharge of plaintiff was not for misconduct connected with her employment and found her entitled to benefits.
[2] Plaintiff asserts that defendant has waived the dilatory exception of prematurity by failing to plead it prior to filing the exception of prescription. That issue is not before us on this appeal, nor are any issues before us in this appeal regarding possible defenses defendant may have to the allegations of defamation.
[3] "The board shall administer and enforce the provisions of this Chapter and the rules, regulations, and orders issued hereunder with respect to public employees and elected officials." La.R.S. 42:1132(C).
[4] Plaintiff argues that in Puig v. Greater New Orleans Expressway Com'n, 00-924 (La.App. 5 Cir. 10/31/00), 772 So.2d 842, this Court "assumed" that public employees have a private right of action for reinstatement under La. R.S. 42:1169. In fact, in Puig we merely mentioned that La.R.S. 42:1169 protects public employees from discipline or reprisal for reporting acts of impropriety, while La.R.S. 23:967 is targeted at more serious conduct. The question of a private right of action under La.R.S. 42:1169 was not before us in Puig and we made no statement authorizing such. Rather, the issue in Puig was whether a public employee could pursue an action under La.R.S. 23:967 or whether that statute was limited to private employees. 00-924 at p. 5, 772 So.2d at 845.